**UNITED STATES of America, Plaintiff,**

v.

**Pinemua SOLIAI, Defendant.**

**Cr. No. 01–00349 SOM.**

United States District Court, D. Hawai'i.

May 9, 2002.

Thomas J. Brady, Assistant U.S. Attorney, Office of the United States Attorney, Honolulu, HI, for plaintiff.

Donna M. Gray, Assistant Federal Defender, Office of the Federal Public Defender, Honolulu, HI, for defendant.

*ORDER REGARDING BASE OFFENSE LEVEL*

MOLLWAY, District Judge.

This order memorializes the court's oral ruling as to the manner in which the court determined the base offense level in calcu-

---

lating the sentencing guideline range for Defendant Pinemua Soliai ("Soliai"). This order does not address sentencing decisions regarding matters other than the base offense level. For a discussion of those other decisions the parties must rely on the transcript of the sentencing hearing.

On January 17, 2002, Soliai pled guilty without a plea agreement to having possessed with intent to distribute in excess of 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On that date, before Soliai pled guilty, the court explained its practice with respect to charges involving methamphetamine. The court said that, when an indictment referred to methamphetamine without some language putting a defendant on notice that pure or actual methamphetamine was being referred to, the court read the charge as referring to a mixture or substance containing methamphetamine. Specifically, the court said, "I have been reading a reference to the unadorned word 'methamphetamine' without some other description clarifying that it's really only pure methamphetamine that we're talking about as being a reference to impure methamphetamine." The court said that it therefore read the indictment as charging Soliai with possession of more than 50 grams of a mixture containing a detectable amount of methamphetamine, rather than as charging Soliai with possession of more than 50 grams of pure methamphetamine. This distinction had a major impact on the statutory minimum and statutory maximum sentence Soliai faced if guilty as charged.

If guilty of the charge of possessing more than 50 grams of a mixture containing methamphetamine, he faced the penalties set forth in 21 U.S.C. § 841(b)(1)(B).

That is, Soliai faced a mandatory minimum prison term of 5 years, and a maximum prison term of 40 years. Section 841(b)(1)(B)(viii) provides for that prison range for crimes involving "5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." [1]

Had the court read the indictment as referring to 50 grams or more of pure methamphetamine, Soliai, under section 841(b)(1)(A), would have faced a mandatory minimum of 10 years in prison, with a maximum of life imprisonment. Section 841(b)(1)(A)(viii) governs crimes involving "50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers or 500 grams or more of a mixture of substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."

Although the court offered to give the parties time to consider their options, the parties agreed to proceed on January 17, 2002, pursuant to the court's reading of the indictment as charging Soliai with possession of more than 50 grams of a mixture containing methamphetamine. The government said it would not seek a superseding indictment charging Soliai with possession of 50 grams or more or pure methamphetamine.

The court therefore informed Soliai of the penalties set forth in section 841(b)(1)(B). Before receiving Soliai's guilty plea, the court told Soliai that it could not at that time determine the sentencing guideline range applicable to him, as the court needed to review the presen-

---

1. The court's practice is to consider a reference that tracks the statutory language of "methamphetamine, its salts, isomers, or salts of its isomers" as one way of indicating that

pure methamphetamine is involved. *United States v. Muns,* 192 F.Supp.2d 1046, 1048 (D.Haw.2002).

tence investigation report that would be subsequently prepared.

At one point in the hearing, defense counsel said, "[H]e understands that the sentencing guidelines will be determined under a factual basis of, well, what we normally see in almost a hundred percent of the cases, and that is laboratory evidence, Your Honor."

Toward the end of the hearing, the government's attorney noted, "The methamphetamine recovered that day was analyzed by the DEA Western Lab and determined to weigh 109.3 grams of methamphetamine with a purity of 96.3 percent."

Thereafter, Soliai himself explained what he had done and pled guilty.

At the time of sentencing, the parties disputed how Soliai's base offense level should be calculated. Soliai took the position that his base offense level was 26 under U.S.S.G. § 2D1.1(c)(7). That is the base offense level applicable to "[a]t least 50 G but less than 200 G of Methamphetamine, or at least 5 G but less than 20 G of Methamphetamine (actual) or at least 5 G but less than 20 G of 'Ice' ". The government took the position that the proper base offense level was 32, under U.S.S.G. § 2D1.1(c)(4). That is the base offense level applicable to "[a]t least 500 G but less than 1.5 KG of Methamphetamine, or at least 50 G but less than 150 G of Methamphetamine (actual), or at least 50 G but less than 150 G of 'Ice' ".

Note B to the Drug Quantity Table set forth in section 2D1.1(c) provides that the term "Methamphetamine (actual)" refers to "the weight of the controlled substance, itself, contained in the mixture or substance." That guideline further provides that, in the case of a mixture or substance containing methamphetamine, the court should "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the ... methamphetamine (actual), whichever is greater."

Soliai does not dispute the DEA laboratory report providing that the mixture containing methamphetamine weighed 109.3 grams and was 96 percent pure methamphetamine. That meant the mixture had 104.9 grams of pure or actual methamphetamine. Soliai simply argues that he is entitled to a base offense level that reflects only the weight of the mixture, without consideration of the purity level or of the weight of the pure methamphetamine contained in the mixture. Soliai's argument is contrary to Note B, discussed in the preceding paragraph. Because the offense level based on 104.9 grams of pure or actual methamphetamine is higher than the offense level based on the entire weight of the mixture, the court, in keeping with Note B, uses the offense level based on 104.9 grams of pure or actual methamphetamine. The base offense level is 32.

Nothing in the colloquy the court had with the attorneys or Soliai before he entered his guilty plea in any way suggested that the court would ignore the sentencing guidelines or would ignore the purity of the drug mixture. The only unusual thing about the colloquy was the court's explanation as to why the charge implicated penalties under 21 U.S.C. § 841(b)(1)(B) rather than under 21 U.S.C. § 841(b)(1)(A). Soliai is not subject to a mandatory minimum prison term of 10 years or the possibility of life imprisonment. That does not mean, however, that Soliai escapes the effect of the sentencing guidelines based on evidence of the weight of the drug mixture or of the purity.